**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL ZERBY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:16-cv-00383** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **DOLLY I. WALTZ, <u>et al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court are four motions to dismiss Plaintiff Paul Zerby's amended complaint filed by Defendants East Pennsboro Township Police Department (Doc. No. 6), Kimberly Henning (Doc. No. 7), Dolly I. Waltz (Doc. No. 10), and Cumberland County, Cumberland County District Attorney's Office, District Attorney David J. Freed (hereafter "District Attorney Freed"), and Detective Rodney Smith (collectively referred to as the "Cumberland County Defendants") (Doc. No. 8). For the reasons provided herein, the Court will grant Defendants' motions to dismiss.

I.      BACKGROUND

This action was initiated by Plaintiff Paul Zerby on October 21, 2015 through the filing of a praecipe to issue writ of summons in the Court of Common Pleas of Cumberland County. On February 11, 2016, following the filing of an original complaint in this matter, Plaintiff filed a five-count amended complaint, asserting a number of Pennsylvania common law claims in addition to a federal cause of action under 42 U.S.C. § 1983. On March 3, 2016, this action was removed to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1331. (Doc. No. 1.)

The allegations forming the basis of Plaintiff's amended complaint are as follows.  This matter concerns subsequently dropped criminal charges instituted against Plaintiff in connection with his role as power-of-attorney for his elderly mother, Betty Zerby.  (Id. ¶¶ 8-10.)  Plaintiff alleges that in 2009, Betty Zerbe began residing with Plaintiff at his home in Lebanon County following the death of her husband.  (Id.)  To accommodate his aging mother, Plaintiff asserts that he made certain renovations to his home in Lebanon County.  (Id. ¶ 11.)  In 2011, Plaintiff's sister and niece, Dolly I. Waltz and Kimberly Henning ("Defendants Waltz and Henning"), contacted authorities to report that Plaintiff had financially defrauded Betty Zerbe.  (Id. ¶ 12.)  Plaintiff accuses Defendants Waltz and Henning of falsely reporting Plaintiff as part of a "conspiracy to exact revenge for being disinherited from Betty Zerby's will."  (Id. ¶ 34.)  Specifically, Plaintiff explains that Defendants Waltz and Henning were "essentially excluded from Betty Zerby's will, being left $1,000 and $1.00 respectively from her estate." (Id. ¶ 13.)  Plaintiff alleges that Detective Rodney Smith, employed by the Cumberland County District Attorney's Office, was enlisted to investigate the allegations of Defendants Waltz and Henning.  (Id. ¶ 15.)   Plaintiff suggests that the investigation launched by Detective Rodney Smith into Plaintiff's alleged misconduct, which consisted of interviews with "the victim, the State Office of Aging (who were investigating this matter in their own right), and other purported victims," was insufficient.  (Id. ¶¶ 15-16.)

In November of 2013, "[b]ased on the statements of Defendants Waltz and Henning, Plaintiff was arrested and charged with "Felony 1 Knowledge that Property is Proceeds of Illegal Act (18 Pa. C.S. § 5111), Felony 2 Theft by Deception (18 Pa. C.S. § 3922), and Felony 3 Theft by Failure to Make Required Disposition of Funds (18 Pa. C.S. § 3927)." ( Id. ¶ 23.)  In Plaintiff's view, his arrest was made "without any supporting evidence of probable cause." (Id.)

Plaintiff maintains that the underlying criminal proceedings continued from November of 2013 to July of 2015, which required him to expend "significant sums" during that time period to defend against those criminal charges.  (Id. ¶ 24.)

According to Plaintiff, in July of 2015, the Cumberland County District Attorney's Office "requested the case against [him] be discontinued and nolle prossed due to significant witness availability issues, the inconsistencies offered by the complainants, and the lack of cooperation from the Centre County Office of Aging."  (Id. ¶ 30.)  Plaintiff maintains that "[a]lthough the information that led to the Commonwealth's decision to seek a nolle pros had remained unchanged since the onset of the investigation, the Defendants chose to continue to pursue this matter for two years" (Id. ¶31), which "complete[ly]  interrupt[ed] . . . his life, significant[ly] damage[d] . . .  his reputation, and [caused] financial damages in attorney's fees."  (Id. ¶ 32.) Plaintiff avers that the Cumberland County Defendants and the East Pennsboro Township Police Department "continued their prosecution to save fac[e] and in the hope that Plaintiff would take a plea deal."  (Id. ¶ 33.)

In essence, Plaintiff claims that the Cumberland County Defendants and the East Pennsboro Township Police Department improperly and maliciously pursued charges against him based on Defendants Waltz and Henning's "lies and slanderous besmirching" of him.  (Id. ¶ 35.)  He further contends that these Defendants wrongfully allowed the criminal case to continue long after it should have been withdrawn. (Id. ¶ 36.)  Plaintiff seeks to recover compensatory damages, punitive damages, costs and attorney's fees against these Defendants.

Four motions to dismiss the amended complaint have been filed in the above-captioned action following its removal to the Middle District of Pennsylvania from the Court of Common

Pleas of Cumberland County.  Those motions have been fully briefed and are now ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under <u>Twombly</u> and <u>Iqbal</u>, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004).[1]

---

[1] In addition to the amended complaint in this matter (Doc. No. 1-3), the Court has taken judicial notice of the Plaintiff's criminal docket sheets in <u>Commonwealth of Pennsylvania v. Paul E Zerby</u>, available through the Unified Judicial System of Pennsylvania Web Portal at: https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-09103-CR-0000286-2013, Magisterial District Judge 09-1-03, Docket Number MJ-09103-CR-0000286-2013; and https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-21-CR-0000552-2014, Court of Common Pleas of Cumberland County, Docket Number CP-21-CR-0000552-2014.  <u>See</u> Fed. R. Evid. 201; <u>Wilson v. McVey</u>, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008). Consideration of the docket entries in Plaintiff's underlying criminal proceedings does not require conversion of the motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6) into

III.    **DISCUSSION**

Plaintiff raises four Pennsylvania state law claims and one constitutional law claim in his amended complaint.  Count I asserts a "slander/libel" claim against Defendants Waltz and Henning.  (Doc. No. 1-3 at 7.)  Count II asserts a civil conspiracy claim against Defendants Waltz and Henning.  (Id. at 8.)  Count III asserts a "malicious prosecution and malicious abuse of process" claim under 42 U.S.C. § 1983 against the Cumberland County Defendants and the East Pennsboro Township Police Department.  (Id. at 9.)  Count IV asserts a common law "malicious prosecution/abuse of process" claim against the Cumberland County Defendants and the East Pennsboro Township Police Department (Id. at 10), and Count V asserts an invasion of privacy claim against all Defendants.  (Id. at 11.)

A.    PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS

Count III of Plaintiff's amended complaint sets forth a "malicious prosecution and malicious abuse of process" claim under 42 U.S.C. § 1983 against the Cumberland County Defendants and the East Pennsboro Township Police Department.  (Id. at 9.)   Section 1983 affords a private citizen redress for violations of federal constitutional law committed by state officials.  See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

motions for summary judgment under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(d).

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To maintain a cause of action under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### 1.      Claims against District Attorney Freed

While Plaintiff's amended complaint is not a model of clarity, the Court reads this operative pleading as predicating District Attorney Freed's liability on a lone allegation that District Attorney Freed, "by and through his agents and assistant district attorneys," initiated criminal charges against Plaintiff in the absence of probable cause.  (Doc. No. 1-3 ¶ 52.)  The Cumberland County Defendants move for dismissal of the claims against District Attorney Freed on the basis that Plaintiff has failed to allege his personal involvement in the underlying misconduct and that absolute immunity attaches to all actions taken by District Attorney Freed in his role as a prosecutor.  (Doc. No. 8.)

### a.      Lack of Personal Involvement

In order to prevail under Section 1983, a plaintiff must meet a threshold requirement of alleging facts demonstrating a defendant's personal involvement in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate

particularity." Id.  Allegations that contemplate the imposition of liability based on respondeat superior are simply insufficient for purposes of establishing a defendant's personal involvement in the purported violation of plaintiff's federal civil rights. Id.

Here, the amended complaint is entirely devoid of factual allegations supporting District Attorney Freed's personal involvement in the events or occurrences underlying Plaintiff's Section 1983 claims.  Indeed, a review of the amended complaint reveals that Plaintiff attempts to hold District Attorney Freed personally culpable for the alleged acts of misconduct based solely on his supervisory status, which runs afoul of the well-settled rule barring civil rights liability based upon a theory of respondeat superior.[2] Accordingly, the Court finds dismissal of District Attorney Freed from the amended complaint to be appropriate, as Plaintiff has failed to set forth factual allegations demonstrating this Defendant's personal involvement in the alleged unconstitutional acts.

### b.      Prosecutorial Immunity

More importantly, even accepting as true the allegations contained in the amended complaint, and affording Plaintiff the benefit of every favorable inference drawn therefrom, the claims asserted against District Attorney Freed cannot survive dismissal, as District Attorney Freed is entitled to prosecutorial immunity.

 Prosecutors are afforded varying levels of official immunity depending upon the nature of the prosecutor's conduct.  Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992). A prosecutor enjoys absolute immunity for those actions "performed in a 'quasi-judicial'" role, which includes in-court activity as well as "selected out-of-court behavior 'intimately associated

---

[2] The Court's finding with respect to District Attorney Freed's lack of personal involvement is bolstered by the underlying state court docket sheet, which indicates that Assistant District Attorney Matthew P. Smith prosecuted Plaintiff's case.  Commonwealth  of Pennsylvania v. Paul E Zerby, CP-21-CR-0000552-2014 (Cumberland Cnty. C.C.P.).

with the judicial phase'" of the criminal process.  Id. (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  By comparison, a prosecutor is entitled to qualified immunity for such actions taken in an investigative or administrative capacity.  Id.

To determine whether absolute prosecutorial immunity applies, a court must undertake a two-fold functional analysis.  Specifically, the court must determine "what conduct forms the basis for the plaintiff's cause of action, and . . . then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served."  Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir. 2011) (citation omitted).  Certain governing principles guide this inquiry.  For example, "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role."  Kulwicki, 969 F.2d at 1463.  Further, "[a] prosecutor's alleged failure to properly investigate before initiating a prosecution is also conduct within the scope of absolute immunity."  Schrob v. Catterson, 948 F.2d 1402, 1410 (3d Cir. 1991).  Absolute immunity shields prosecutors from liability for actions taken on behalf of the state in preparing for, initiating, and prosecuting criminal charges, even when those actions were taken in the absence of a good faith belief that any wrongdoing occurred.  See Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 502 (3d Cir. 1997) ("[A]n allegation that the official acted in bad faith, knowing his conduct to be unauthorized, will not strip the official of absolute immunity.  Similarly, absolute immunity will be available . . . even if the authority in fact was lacking under the law.").

Here, even assuming, arguendo, that Plaintiff could overcome the initial hurdle of demonstrating District Attorney Freed's personal involvement in the alleged unconstitutional conduct, it is clear that the principal allegations arguably pertaining to District Attorney Freed concern the decision to pursue charges against Plaintiff without probable cause.  The exercise of

prosecutorial discretion in initiating these charges indisputably constitutes a traditional prosecutorial function, entitling District Attorney Freed to absolute immunity.  (See Doc. 1-3, at 9); Buckley v. Fitzsimmons, 509 U.S. 259, 274 n.5 (1993) (noting that a prosecutor will be absolutely immunized from a malicious prosecution suit arising out of the "prosecutor's decision to bring an indictment, whether he has probable cause or not").  Accordingly, the Court will grant the Cumberland County Defendants' motion to dismiss District Attorney Freed from this action with prejudice, as he is absolutely immunized from suit.[3]

> **2.    Claims against the East Pennsboro Township Police Department, Cumberland County, and the Cumberland County District Attorney's Office**

Plaintiff asserts a Section 1983 claim against named Defendants the East Pennsboro Township Police Department, Cumberland County, and the Cumberland County District Attorney's Office.  The Cumberland County Defendants and the East Pennsboro Township Police Department move for dismissal of the claims against the East Pennsboro Township Police Department and the Cumberland County District Attorney's Office, as these Defendants are not proper entities subject to suit.  (See Doc. Nos. 6, 9.)

The Court agrees.  The East Pennsboro Township Police Department and the Cumberland County District Attorney's Office do not constitute "persons" amenable to suit under Section 1983.  Rather, these entities are merely administrative arms of their respective municipalities;

---

[3]  The Court notes that Plaintiff has not specified in his amended complaint whether he asserts his claims against Defendants in their individual or official capacities.  To the extent that Plaintiff brings claims against District Attorney Freed in his official capacity, such claims are subject to dismissal, as it is well settled that a "suit against a city official named in his or her official capacity is a suit brought against the entity he or she represents."  Estate of Tyler ex rel. Floyd v. Grossman, 108 F. Supp. 3d 279, 289 (E.D. Pa. 2015) (citing Hafer v. Melo, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.").  Accordingly, any official capacity claims brought against this Defendant must be dismissed.

namely, East Pennsboro Township and Cumberland County.  Indeed, it is well established that

these entities have no independent legal existence from the municipalities they serve and thus,

are not subject to suit in a Section 1983 civil rights action.  Briggs v. Moore, 251 F. App'x 77,

79 (3d Cir. 2007) (affirming the dismissal of a Section 1983 suit against the Monmouth County

District Attorney's Office because it "is not a separate entity that can be sued under § 1983");

Reitz v. Cnty. of Bucks, 125 F.3d 139, 148 (3d Cir.1997) (affirming district court's entry of

summary judgment in favor of the Bucks County District Attorney's Office because it "is not an

entity for purposes of § 1983 liability"); Martin v. Red Lion Police Dep't., 146 F. App'x 558, 562

n.3 (3d Cir. 2005) ("[T]he Red Lion Police Department, as the sub-division of defendant Red

Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a

proper defendant in an action pursuant to 42 U.S.C. § 1983.").  As these Defendants are not

proper parties to this litigation, the Court will dismiss the claims against the East Pennsboro

Township Police Department[4] and the Cumberland County District Attorney's Office with

prejudice.

---

[4] Were this Court to construe Plaintiff's amended complaint as asserting claims against the
proper municipal entity—East Pennsboro Township—such claims would not withstand a motion
to dismiss.  The amended complaint contains no factual allegations of any actionable policy or
custom implemented or executed by East Pennsboro Township that could be deemed to have
proximately caused Plaintiff's purported constitutional injuries, as would be necessary to trigger
the imposition of municipal liability on East Pennsboro Township.  Quite the contrary, the
amended complaint, taken together with the state court docket sheet, conclusively establish that
this municipality's policies or customs played no role in causing the injury of which the Plaintiff
now complains.  Indeed, the state court docket sheet identifies the Cumberland County District
Attorney's Office as the arresting agency that brought charges against Plaintiff.  Commonwealth
of Pennsylvania v. Paul E Zerby, CP-21-CR-0000552-2014 (Cumberland Cnty. C.C.P.).  As
Plaintiff acknowledges in his amended complaint, the arresting officer, Detective Rodney Smith,
is employed with the Cumberland County District Attorney's Office.  (Doc. 1-3 ¶ 5.)  Thus,
further amendment of Plaintiff's amended complaint as to this potential defendant would be
futile given the circumstances of this case.  Accordingly, the Court will not permit Plaintiff leave
to amend his pleading to assert a municipal liability claim against East Pennsboro Township.

Unlike an unincorporated police department or prosecutor's office, however, a municipality, such as Cumberland County, is included among those "persons" against whom suit may be lodged under Section 1983. A municipality or other local government entity may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such a deprivation." Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). A municipal entity cannot be held vicariously liable under Section 1983 for constitutional violations perpetrated by its agents or employees. Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007). Rather, municipal liability is limited to those actions for which the municipality itself is actually responsible. Pembaur, 475 U.S. at 479. Liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S 658, 694 (1978). That is, the municipality is subject to liability in a Section 1983 action only to the extent it maintained an unconstitutional custom or policy that caused the constitutional violations alleged by Plaintiff. This requires "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." Id. A custom "is an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)). To recover against a municipality under Section 1983, a plaintiff must "identify the challenged [custom or] policy, attribute it to the [municipality] itself, and show a causal link between execution of the

policy [or custom] and the injury suffered." Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984) (citation omitted).

Here, the Court finds that the amended complaint wholly fails to satisfy the exacting standard of pleading that would give rise to a municipal liability claim under Section 1983. Absent from the amended complaint are any factual allegations specifying any relevant policy or custom attributable to Cumberland County that purportedly caused the constitutional violation. McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). Equally fatal, Plaintiff does not offer any factual allegations from which a reasonable inference could be made of a plausible nexus between the policy or custom implemented or executed by a responsible municipal decision maker and the constitutional deprivation suffered by Plaintiff. As Plaintiff has failed to plead the minimum facts needed to state a viable municipal liability claim, the Court will dismiss Plaintiff's Section 1983 claim against Cumberland County. However, Plaintiff will be permitted an opportunity to amend his operative pleading to allege sufficient facts that identify the challenged policy or custom, attribute it to the municipality itself, and establish a causal link between the policy or custom and the constitutional injury alleged.

Accordingly, the Court will grant the Cumberland County Defendants and the East Pennsboro Township Police Department's motions to dismiss the East Pennsboro Township Police Department and the Cumberland County District Attorney's Office with prejudice. Further, the Court will dismiss Plaintiff's claims against Cumberland County without prejudice to the Plaintiff amending his pleading to assert a proper municipal liability claim against this Defendant.

### 3.   Fourth Amendment malicious prosecution claim against Detective Rodney Smith

Having dismissed the Section 1983 claims against District Attorney Freed, Cumberland County, the Cumberland County District Attorney's Office, and East Pennsboro Township Police Department, the Court turns to Plaintiff's malicious prosecution claim against remaining Defendant Detective Rodney Smith.

In order to prevail on a claim of malicious prosecution, plaintiff must plead facts satisfying each of the following elements:

> (1) the defendant initiated a criminal proceeding, (2) the criminal proceeding ended in [plaintiff's] favor, (3) the defendant initiated the proceeding without probable cause, (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice and, (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).  Here, the Cumberland County Defendants argue in their motion to dismiss that Plaintiff has failed to properly allege the third, fourth, and fifth elements comprising a claim of malicious prosecution.  (Doc. No. 8.)[5]

With respect to the probable cause inquiry, the Court is guided by certain benchmark legal principles.[6]  Specifically, a "police officer may be liable for civil damages for an arrest if

---

[5] With respect to the fifth element, Defendants correctly argue that the amended complaint's reference to Plaintiff's arrest does not constitute an assertion of a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding, as it is unaccompanied by allegations that he was "incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that [ ]he endured any other 'post-indictment' deprivation of liberty."  Wiltz v. Middlesex Cty. Office of Prosecutor, 249 F. App'x 944, 949 (3d Cir. 2007). However, the Court observes from the state court docket sheet that Plaintiff was confined in the Cumberland County Prison following his preliminary arraignment on November 27, 2013 until December 2, 2013 due to his inability to post bond, which was originally set at $25,000.00. Commonwealth of Pa. v. Paul E Zerby, MJ-09103-CR-0000286-2013.   In light of these additional facts, the Court finds Plaintiff's arrest, $25,000.00 bond requirement, and subsequent physical detainment, to be sufficient for purposes of overcoming a motion to dismiss on this element at this stage in the proceedings.

'no reasonable competent officer' would conclude that probable cause exists." Wilson v. Russo,

212 F.3d 781, 786 (3d Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

However, probable cause will be found to exist, thereby defeating a malicious prosecution claim,

when "reasonably trustworthy information or circumstances within a [law enforcement] officer's

knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense

has been committed by the person [in question]." Spiker v. Whittaker, 553 F. App'x 275, 278

(3d Cir. 2014) (citing United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)).  "[T]he

probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather,

whether the arresting officer reasonably believed that the arrestee had committed the crime."

Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989).  A finding of probable cause does not

"require the same type of specific evidence of each element of the offense as would be needed to

support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972).

    Here, it appears that Plaintiff frames his malicious prosecution claim against Detective

Rodney Smith as one based on a theory that Detective Rodney Smith failed to conduct a

thorough investigation into the allegations made by Defendants Waltz and Henning that would

justify the initiation of criminal proceedings against him.  Specifically, Plaintiff contests that the

post-report investigation into the allegations made by complainants, Waltz and Henning,

consisted of interviewing the aging victim, "the State Office of Aging (who were investigating

this matter in their own right), and other purported victims."  (Doc. 1-3 ¶ 16.)  Plaintiff further

---

[6] Generally, the question of probable cause in a Section 1983 damages suit is one for the jury, particularly when the determination depends upon credibility conflicts.  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000); Montgomery v. DeSimone, 159 F.3d 120, 124 (3d Cir. 1998). However, it is appropriate for a court to find probable cause as a matter of law "if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for [plaintiff's arrest]." Montgomery, 159 F.3d at 124 (citation omitted).

complains that Detective Rodney Smith did not record Betty Zerby's interview, obtain a statement from the alleged victim, or conduct a follow-up interview.  (Id. ¶¶ 17-19.)   Plaintiff concludes that he was arrested and charged with "Felony 1 Knowledge that Property is Proceeds of Illegal Act (18 Pa. C.S. § 5111), Felony 2 Theft by Deception (18 Pa. C.S. § 3922), and Felony 3 Theft by failure to Make Required Disposition of Funds (19 Pa. C.S. § 3927)," based on the statements provided by Waltz and Henning, "without any supporting evidence of probable cause."  (Id. ¶ 23.)

Here, the Court finds that the amended complaint lacks sufficient facts to support a reasonable inference that Detective Rodney Smith lacked probable cause to initiate criminal charges against Plaintiff.  Disregarding the bald, legal conclusions couched as factual allegations contained in the amended complaint, what remains before the Court is simply a challenge "to how the investigation was conducted."  Wheeler v. Wheeler, 639 F. App'x 147, 150 (3d Cir. 2016) (upholding district court's dismissal of plaintiff's malicious prosecution claim for failure to state a claim on the basis that plaintiff's amended complaint, consisting of allegations that the defendant officer refused to interview the plaintiff and his wife following the altercation, visit the scene of the incident with the plaintiff,  and review plaintiff's medical records, "revolve around how the investigation was conducted," and do not "suggest that [defendant] lacked probable cause to believe that [plaintiff] committed the offenses with which he was charged"). Specifically, Plaintiff principally takes issue with Detective Rodney Smith's failure to record a statement from the victim, "who at the time was well into her 80's," and his failure to conduct a follow-up interview.  These contentions, alone, however, do not call into question whether Detective Rodney Smith initiated the proceedings without probable cause.  Id.; see also Mitchell v. Obenski, 134 F. App'x 548, 551 (3d Cir. 2005) (noting that an allegation that a "police

investigation could have been more thorough does not vitiate probable cause").  Plaintiff neither

identifies the existence of certain facts and evidence negating Detective Rodney Smith's

probable cause calculus that he believes would have been discovered had Detective Rodney

Smith expanded the scope of his investigation, nor submits that the information obtained during

the interviews taken with the victim, the Office of Aging, and other victims in any way

contradicted the statements provided by Defendants Waltz and Henning.  <u>See</u> Basile v. Twp. of

Smith, 752 F. Supp. 2d 643, 657 (W.D. Pa. 2010) (dismissing a claim of false arrest pursuant to a

warrant where plaintiffs only offered conclusory allegations without any specific supporting

facts); <u>see also</u> <u>Meketa v. Kamoie</u>, 955 F. Supp. 2d 345, 359 (M.D. Pa. 2013) ("In the context of

false arrest claims, at least one court within this Circuit has previously held that 'nowhere does

the determination of probable cause require that the alleged perpetrator be interviewed by

police.'").

Moreover, Plaintiff's state court docket, of which this Court takes judicial notice, further

undercuts Plaintiff's position that probable cause was lacking to initiate charges against him. The

state court docket reveals that, following a preliminary hearing conducted on February 26, 2014

before Magisterial District Judge Richard S. Dougherty, Plaintiff's prosecution was bound over

for trial.  <u>Commonwealth of Pa. v. Paul E Zerby</u>, MJ-09103-CR-0000286-2013.  The purpose of

a preliminary hearing is to determine "whether there is a <u>prima</u> <u>facie</u> case that (1) an offense has

been committed and (2) the defendant has committed it," which is "akin to the standard for

probable cause, which requires only that a reasonable person believe that an offense has been . . .

committed by the person . . . arrested."  <u>Wheeler</u>, 639 F. App'x at 151 (citations omitted); <u>see</u>

234 Pa. Code § 542 (D).  Although not conclusive, the magisterial district judge's "independent,

contemporaneous judicial determination" to hold Plaintiff's case over for trial is "weighty

17

evidence" that sufficient probable cause existed to try Plaintiff for the charged offenses. Wheeler, 639 F. App'x at 151; Doll v. Williams, No. 08–CV–675, 2009 WL 3103832, at *1 (M.D. Pa. Sept. 24, 2009) (Caldwell, J.) ("That a magisterial district judge determined that Pennsylvania had established a prima facie case may indeed be 'weighty evidence,' but it is not determinative."). Indeed, while mindful of the weight to be afforded an independent probable cause determination made by a magisterial district judge, the Court cannot overlook that Plaintiff has not provided any factual allegations in the amended complaint that would arguably give this Court reason to question the rebuttable presumption created by the preliminary hearing that probable cause existed for the prosecution.[7] Wheeler, 639 F. App'x at 151.

Having found the amended complaint to be lacking in allegations from which a reasonable inference could be drawn that the underlying criminal prosecution was maliciously initiated by Detective Rodney Smith in the absence of probable cause, the Court will grant the Cumberland County Defendants' motion to dismiss as it relates to Plaintiff's Fourth Amendment malicious prosecution claim against Detective Rodney Smith. (Doc. No. 8.) However, as it is unclear at this procedural stage whether amendment of this claim would be futile, the Court will permit Plaintiff leave to file an amended complaint to correct the aforementioned pleading deficiencies.

---

[7] Consequently, the Court also finds that Plaintiff has failed to allege facts suggestive of actual malice—the fourth element of a malicious prosecution claim. Actual malice may be inferred from the facts and circumstances indicating the absence of probable cause. Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993). As Plaintiff has failed to allege the absence of probable cause, he has also, by implication, failed to allege that the charges brought against him were actuated by malice. However, Plaintiff will be afforded an opportunity to cure this deficiency by amending his complaint to properly allege facts and circumstances indicating the absence of probable cause that would allow for an inference of actual malice to be made.

### 4.      Fourth Amendment abuse of process claim against Detective Rodney Smith

As noted above, Plaintiff captions Count III of his amended complaint as a "Violation of 42 U.S.C. § 1983- Malicious Prosecution and Malicious Abuse of Process."  (Doc. 1-3, at 9.)  To the extent that Plaintiff attempts to assert a Fourth Amendment abuse of process claim against Detective Rodney Smith independent of his malicious prosecution claim,  it is clear from the face of this amended complaint that Plaintiff cannot maintain a cognizable claim of abuse of process against this Defendant.  In contrast to a malicious prosecution claim, a malicious abuse of process claim "lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'"  Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989) (citing Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977)).  According to the amended complaint's allegations, Detective Rodney Smith's involvement in the proceedings began and ended with Plaintiff's arrest and the filing of criminal charges.  Those allegations are germane to a claim for malicious prosecution, not malicious abuse of process.  Indeed, given the allegations in the amended complaint, "it would not have been [Detective Rodney Smith] who chose to abuse the criminal process, but rather the prosecuting attorney.  It is therefore a legal impossibility that [this Defendant] would be liable for violating [Plaintiff's] rights on this claim."  Adams v. Selhorst, 779 F. Supp. 2d 378, 390 (D. Del.), aff'd sub nom. Adams v. Officer Eric Selhorst, 449 F. App'x 198 (3d Cir. 2011).

This claim suffers from yet another fatal deficiency.  "[T]here is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion."  Douris v. Schweiker, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002), aff'd sub nom. Douris v. Rendell, 100 F. App'x 126 (3d Cir. 2004) (citation omitted).  Here, the allegations that Detective Rodney Smith "continued the[ ] prosecution to save fac[e] and in the

hope that Plaintiff would take a plea deal" (Doc. No. 1-3 ¶ 33), and "wrongfully allowed the criminal case against [Plaintiff] to continue long after it should have been withdrawn" (Id. ¶ 36), do not amount to a misuse of legal process for some unlawful object. Rather, the only reasonable inference that can be drawn from these allegations is that process was carried out to its authorized conclusion. Williams v. Fedor, 69 F. Supp. 2d 649, 673 (M.D. Pa. 1999) ("Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution.").

Accordingly, the Court will dismiss Plaintiff's malicious abuse of process claim against Detective Rodney Smith with prejudice, as the allegations in the amended complaint do not give rise to such a cause of action.

B.      PLAINTIFF'S STATE LAW CLAIMS

### 1.      Claims against Defendants Waltz and Henning

Plaintiff has also asserted claims of slander/libel (Count I), civil conspiracy (Count II), and invasion of privacy (Count V), against Defendants Waltz and Henning. Defendants Waltz and Henning both move to dismiss the claims asserted against them on timeliness grounds, arguing that it is apparent on the face of the amended complaint that the claims asserted against them are barred by the applicable one-year statute of limitations. (Doc. Nos. 7, 10.) Alternatively, Defendants assert as a basis for dismissal Plaintiff's failure to plead the elements of a cause of action sounding in libel, slander, invasion of privacy, and civil conspiracy with requisite specificity. (Id.)

Pennsylvania has a one-year statute of limitations for libel, slander, and invasion of privacy actions. 42 Pa. C.S.A. § 5523(1). The statute of limitations governing a civil

conspiracy claim parallels the statute of limitations for the underlying substantive offense "most closely related to that which the defendants were alleged to have conspired to commit . . . ." Ammlung v. City of Chester et al., 494 F.2d 811, 814 (3d Cir. 1974) (citations omitted).  Applied here, the statute of limitations for Plaintiff's civil conspiracy claim is the one-year statute of limitations applicable to Plaintiff's slander, libel, and invasion of privacy claims. The statute of limitations for these claims begins to run "upon the occurrence of the final significant event necessary to make the claim suable."  Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1966) (citations omitted); see Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005) ("[A] cause of action accrues when the plaintiff could have first maintained the action.").  Thus, pursuant to Pennsylvania law, a cause of action for a tort-based claim accrues immediately upon the occurrence of the affirmative unlawful act.

Defendants contend that the amended complaint is completely devoid of any allegations of tortious misconduct attributable to Defendants Waltz and Henning arising within one year prior to the date Plaintiff commenced the above-captioned action on October 21, 2015.  Rather, as Defendants Waltz and Henning persuasively argue, the only alleged actionable behavior by Defendants in the amended complaint that could conceivably underpin Plaintiff's claims of libel, slander, invasion of privacy or civil conspiracy occurred in 2011 when they purportedly contacted Cumberland County, the Cumberland County District Attorney's Office and the East Pennsboro Police Department to report "that [Plaintiff] had financially defrauded the victim, Betty, of money."  (Doc. No. 1-3 at ¶ 12).  The Court agrees.  The final significant event at issue—and the only alleged communication in the amended complaint from these Defendants—occurred in 2011 when Defendants reported Plaintiff's activities to authorities that triggered an investigation culminating in the filing of criminal charges against Plaintiff.  Thus, to the extent

Plaintiff's slander, libel, invasion of privacy, and civil conspiracy claims are derived from Defendants' communications in 2011, such claims are subject to dismissal, as the statute of limitations period would have expired in 2012, one year from the date the cause of action began accruing in 2011.

In opposition to Defendants Waltz and Henning's motions to dismiss, Plaintiff advances an argument that the statute of limitations "in this case does not begin to run until all actionable behavior by Defendant[s] ha[ve] stopped." (See Doc. No. 18 at 2.) According to Plaintiff, Defendants' actionable conduct has been continual in nature and thus, it cannot be "assign[ed] a specific date for [s]tatute of [l]imitations purposes," though Plaintiff suggests that it has continued "at least until July 2, 2015, when the Cumberland County District Attorney entered the Nolle Prosequi on the criminal case filed against [him]." (Id.) Curiously, Plaintiff offers no legal authority to support this proposition that the statute of limitations only begins to accrue once the harm caused by the alleged tortious act ceases.

The Court finds Plaintiff's continuing violations argument to be unavailing. Pennsylvania law does not permit a litigant to circumvent the statute of limitations for a defamation-based suit by constructing a "'continuing tort' exception to the one-year limitations period. Samuel Dowling, Sr. v. Phila. Newspapers, Inc., NO. 3031., 1995 WL 1315957 (Pa. Com. Pl. Feb. 6, 1995), aff'd sub nom. Dowling v. Phila. Newspapers, A.2d 1304 (Pa. Super. Ct. 1995); see Jannuzzi v. Borough of Edwardsville, No. CIV. A. 3:09-CV-970, 2009 WL 3818427, at *5 (M.D. Pa. Nov. 13, 2009) ("The continuing violations doctrine does not . . . apply to actions for defamation."). Even assuming, arguendo, that Pennsylvania recognized a continuing tort exception to the one-year statute of limitations period governing Plaintiff's claims, it is evident that application of the continuing violations doctrine would not prevent dismissal of the claims

against Defendants Waltz and Henning.  A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Cowell v. Palmer Twp., 263 F.3d 286, 293 (3d Cir. 2001).  Here, Plaintiff has not asserted that these Defendants engaged in any affirmative acts committed by these Defendants but for the 2011 reporting.  Indeed, by Plaintiff's own averment, "Defendants Henning and Waltz[ ] never made any statements in court or on any record as to the alleged actions of [Plaintiff]" in the two years Plaintiff's underlying criminal prosecution was ongoing," from November of 2013 through July of 2015.  (Doc. No. 1-3 at ¶ 26).  Plaintiff complains merely of the "continual ill effects" of Defendants' 2011 communications, which cannot serve as the basis to invoke a continuing violation theory.  Travis v. Deshiel, 832 F. Supp. 2d 449, 454 (E.D. Pa. 2011).

Accordingly, the Court will grant Defendants Waltz and Henning's motions to dismiss Plaintiff's libel, slander, invasion of privacy, and civil conspiracy claims against them, as these claims are grounded on alleged acts of misconduct that occurred prior to October 21, 2014. However, out of an abundance of caution, the Court will afford Plaintiff an opportunity to amend his pleading to attempt to assert timely tort-based causes of action against Defendants Waltz and Henning that fall within the applicable statute of limitations.

### 2. Official capacity claims brought against the Cumberland County Defendants and East Pennsboro Township Police Department

In his amended complaint, Plaintiff asserts state law claims for "malicious prosecution/abuse of process" (Count IV), and invasion of privacy (Count V), against the Cumberland County Defendants and the East Pennsboro Township Police Department. The Cumberland County Defendants and the East Pennsboro Township Police Department contend that these Defendants are immune from liability pursuant to the Pennsylvania's Political Subdivision Tort Claims Act.  (Doc. Nos. 6, 8.)

The Pennsylvania Political Subdivision Tort Claims Act affords municipalities, municipal agencies, and municipal officers acting in an official capacity immunity from liability for all state law tort claims, unless the suit falls within one of eight enumerated exceptions.[8] See 42 Pa. C.S.A. § 8541, et seq. ("[N]o local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.").   It is clear from the amended complaint that none of the eight enumerated exceptions apply here.  Accordingly, the Court will grant the Cumberland County Defendants and the East Pennsboro Township Police Department's motions to dismiss Plaintiff's official capacity state law claims against Defendants Cumberland County, the Cumberland County District Attorney's Office, the East Pennsboro Township Police Department, District Attorney Freed and Detective Rodney Smith, as these Defendants are entitled to immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act.

### 3.    Individual capacity claims brought against District Attorney Freed and Detective Rodney Smith

Although state law claims brought against municipal officers in their official capacities are necessarily barred by the Political Subdivision Tort Claims Act, immunity is abrogated for individual employees whose "acts or conduct . . . constitute[ ] a crime, actual fraud, actual malice or willful misconduct." by.  42 Pa. C.S.A. § 8542(a)(2).  As Plaintiff has brought claims of malicious prosecution, abuse of process, and invasion of privacy against District Attorney Freed and Detective Rodney Smith, intentional tort claims that, if proven, would amount to willful misconduct or actual malice, the Pennsylvania Political Subdivision Tort Claims Act does not

_____

[8] 42 Pa. C.S.A. § 8542 permits the imposition of liability on a local agency when the injurious acts involve: (1) vehicle liability;  (2) care, custody, control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa.C.S.A. § 8542.

foreclose Plaintiff from recovering against these Defendants in their individual capacities with respect to those claims.  Nevertheless, to the extent Plaintiff's brings individual capacity claims of malicious prosecution, abuse of process, and invasion of privacy against District Attorney Freed and Detective Rodney Smith, such claims fail for a number of reasons.

With respect to the state law claims brought against District Attorney Freed in his individual capacity, such claims are barred by the application of immunity afforded under Pennsylvania law to high public officials.  Pennsylvania's common law doctrine of high public official immunity "is unlimited and exempts a high public official from all civil suits for damages" resulting from actions taken or statements made in the course of the official's duties, even when motivated by malice.  Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001); Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952).  Pennsylvania courts routinely accord district attorneys absolute immunity as high public officials.  Durham, 772 A.2d at 70. Here, it is clear from the amended complaint that Plaintiff merely challenges District Attorney Freed's conduct in connection with Plaintiff's underlying criminal proceedings.  As the allegedly actionable behavior by District Attorney Freed occurred in the course of his official duties, he is entitled to absolute immunity. Accordingly, the Court will dismiss the state law claims brought against this Defendant in his individual capacity from the above-captioned action with prejudice.

With respect to Plaintiff's state law claims of malicious prosecution and abuse of process against Detective Rodney Smith in his individual capacity, the Court's assessment of these claims is informed by its findings with respect to Plaintiff's Fourth Amendment malicious prosecution and abuse of process claims.  Indeed, the elements comprising these common law

claims are nearly identical[9] to the elements required to maintain the corresponding federal causes of action.  Consequently, in light of its determination that Plaintiff has failed to plead the requisite elements of a Section 1983 malicious prosecution claim as it relates to the absence of probable cause and malice, and has failed to set forth a cognizable abuse of process claim, the Court must likewise dismiss Plaintiff's state law malicious prosecution and abuse of process claims.  Furthermore, consistent with the treatment given to Plaintiff's parallel federal claims, the Court will not permit Plaintiff to amend his pleadings to assert an abuse of process claim against Detective Rodney Smith, but will grant Plaintiff leave to cure the pleading deficiencies identified above as to his state law malicious prosecution claim.

Plaintiff's invasion of privacy claim against Detective Rodney Smith also fails.  Plaintiff alleges a cause of action for invasion of privacy premised on Detective Rodney Smith's unreasonable intrusion upon his seclusion.  "The Pennsylvania courts have defined this claim, in accordance with the Restatement (Second) of Torts § 652B (1977), as . . . "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.'"  Kline v. Sec. Guards, Inc., 386 F.3d 246, 260 (3d Cir. 2004) (quoting Restatement (Second) of Torts § 652B (1977)).

To state a claim for intrusion upon seclusion, a plaintiff must satisfy the following elements:  (1) an intentional intrusion; (2) upon the solitude or seclusion of the plaintiff, or his private affairs or concerns; (3) that was substantial; and (4) highly offensive.  Tucker v. Merck & Co., 102 F. App'x 247, 256 (3d Cir. 2004) (citation omitted).  The intrusion may be "(1) by

---

[9] Unlike its Section 1983 counterpart, however, the state malicious prosecution claim does not require a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

physical intrusion into a place where the plaintiff has secluded himself, (2) by use of the

defendant's senses to oversee or overhear the plaintiff's private affairs, or (3) some other form of

investigation or examination into plaintiff's private concerns."   Harris by Harris v. Easton Pub.

Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984) (citing Restatement (Second) of Torts § 652B,

comment b).

Here, the Court finds that Plaintiff's amended complaint lacks well-pled allegations that

would arguably support a timely invasion of privacy claim against Detective Rodney Smith.

Discarding Plaintiff's bare recitation of the elements of an invasion of privacy claim consisting

of allegations that "Defendants intentionally intruded upon Plaintiff's solitude, seclusion or

private affairs and concerns" (Doc. No. 1-3 ¶ 67),  in a manner that was  "highly offensive to a

reasonable person" (Id. ¶ 68),  with the "purpose of harming Plaintiff" (Id. ¶ 69),  and caused

"injury and emotional distress" (Id. ¶ 70),  the Court is left with Plaintiff's challenge to

Detective Rodney Smith's deficient investigation into a reported crime involving Plaintiff. As

the only alleged intrusive conduct at issue here is the criminal investigation leading up to the

filing of criminal charges against Plaintiff in November of 2013, it would appear that Plaintiff's

invasion of privacy claim is facially barred by the one-year statute of limitations.[10]

---

[10] Notwithstanding the statute of limitations bar, it is questionable whether the circumstances of
this case could give rise to a viable invasion of privacy claim. To the extent Plaintiff principally
contests Detective Rodney Smith's failure to conduct a thorough investigation or his
employment of traditional investigative interviewing techniques, such allegations do not support
a cognizable claim for intrusion upon seclusion.  A defendant is not liable for the tort of intrusion
upon seclusion, under Pennsylvania law, unless the interference with the plaintiff's seclusion is
substantial and would be highly offensive to the ordinary reasonable person.  The Court is hard
pressed to find how an officer's criminal investigation into a reported crime that consists of
conducting a limited number of interviews with third parties, could amount to an unreasonable
and substantial intrusion into the seclusion of the potential suspect accused of wrongdoing.  See
Rogers v. Int'l Bus. Machs. Corp., 500 F. Supp. 867, 870 (W.D. Pa. 1980) ("Here, there was no
intrusion of [plaintiff's] seclusion or private life[, as] [d]efendant's investigation was limited to
interviews . . . .").  Moreover, as Defendants note, it is uncertain whether the pursuit of criminal

Accordingly, as the amended complaint does not support Plaintiff's plausible entitlement to relief, the Court will dismiss Plaintiff's invasion of privacy claim against Detective Rodney Smith.  However, the Court will afford Plaintiff leave to amend his complaint to assert a timely invasion of privacy claim based on allegations of intrusion upon seclusion against Detective Rodney Smith.

## IV.    CONCLUSION

Based upon the foregoing, the Court will grant Defendants' motions to dismiss.  (Doc. Nos. 6, 7, 8, 10.)  The following claims against the following Defendants will be dismissed with prejudice:

1.  Plaintiff's federal and state law claims against District Attorney Freed;

2.  Plaintiff's federal and state law claims against the Cumberland County District Attorney's Office and the East Pennsboro Township Police Department;

3.  Plaintiff's state law claims against Cumberland County;  and

4.  Plaintiff's Fourth Amendment abuse of process claim and common law malicious abuse of process claim against Detective Rodney Smith.

The Clerk of Court will be instructed to terminate Defendants District Attorney Freed, the Cumberland County District Attorney's Office, and the East Pennsboro Township Police Department from the above-captioned action.

In addition, the following claims against the following Defendants will be dismissed without prejudice to the filing of a second amended complaint within thirty (30) days from the

---

charges alone could qualify as an intrusion into the "private affairs or concerns" of the Plaintiff, as a criminal prosecution is arguably a legitimate concern of the public.  See Davis v. Temple, 673 N.E. 2d 737, 744 (Ill. App. 3d 1996) (recognizing "intrusion upon seclusion" cause of action under Illinois law and holding that given that the "offensive conduct" at issue occurred during the course of a criminal investigation concerning the plaintiff, plaintiff could not meet the "private affairs" prong of the tort, as "[a] criminal investigation is a public matter").

date of this Memorandum and corresponding Order that corrects the pleading deficiencies

identified herein:

1.  Plaintiff's municipal liability claim against Cumberland County;

2.  Plaintiff's Fourth Amendment malicious prosecution claim against Detective Rodney Smith;

3.  Plaintiff's slander, libel, invasion of privacy, and civil conspiracy claims against Defendants Waltz and  Henning; and

4.  Plaintiff's common law malicious prosecution and invasion of privacy claims against Detective Rodney Smith in his individual capacity.

An Order consistent with this Memorandum follows.


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania